15932

STATE v. PHILLIPS

(42 S. E. (2d) 339)

*Messrs. J. A. Hutto* and *C. T. Graydon,* of Columbia, for Appellant, cite:

*Mr. T. Pou Taylor,* Solicitor, of Columbia, for Respondent.

April 3, 1947.

OXNER, AJ.: Appellant, Edward B. Phillips, was tried upon an indictment charging (1) that he unlawfully had alcoholic liquors in his possession in his place of business, and (2) that he had in his possession alcoholic liquors for unlawful use. He was convicted on both counts and this appeal followed. The sole question raised by the exceptions is whether the Court erred in denying a motion for a directed verdict of acquittal made by appellant's counsel at the conclusion of all the testimony.

Appellant operated a place of business in Richland County on the Two Notch Road, just beyond the corporate limits of the City of Columbia, known as the Gamecock Grill, in which there was a dance hall, one bedroom, a storage room and a kitchen. Soft drinks, beer and sandwiches were sold. Between the road and the front of the building was a small area where customers parked. This space was well lighted at night with neon signs and there was also a street light. A short distance from the Gamecock Grill was another building known as the General Arts Building, with which apparently appellant had no connection. There was a fence between the two buildings. The case for the State consisted of the testimony of three members of the State Constabulary, which was to the following effect:

At about ten o'clock on the night of April 20, 1946, these officers drove out the Two Notch Road and parked their car behind some hedges at a distance of approximately one hundred yards from the Gamecock Grill. From this point they were able to obtain a clear view of the front of appellant's place. While sitting in the car, they saw appellant on two occasions leave his place through the front door, go toward the rear of the General Arts Building, and return.

Upon seeing appellant, accompanied by a young man named Evans, leave on a third trip, the officers rushed to the front of the Gamecock Grill and as appellant was returning on the third trip, arrested him while he was on the parking area about three feet from the front door. Evans, who accompanied appellant in making the trip, proceeded into the building. Appellant was searched and the officers found "a fifth of whiskey in his pocket" (It appears that such a bottle holds a fifth of a gallon and is known as a "short quart".) After seizing this whiskey, two of the officers searched the building and found "a fifth of whiskey in the back room where he (appellant) kept his beer and soft drinks stored". They then searched the adjoining grounds and being unable to find any more whiskey, inquired of appellant "where the rest of his whiskey was". Following this inquiry there was some discussion as to the length of time appellant would be given to furnish bond, after which, according to the testimony of Constable McKinnon, "he (appellant) took us to the other side of the General Arts Building, in the direction he made these trips, and showed us the rest of the whiskey. He had four pints in a paper bag hid under some bushes".

We quote the following from the testimony of Constable Harrison:

"Q. This other fellow, Evans, did he run into the place, or walk into the place, or how did he go into the Gamecock Grill when he left Phillips?

"A. He went on in the place. When we drove up there, there was another man standing there in the yard, and Phillips and the other boy walked up, or Phillips walked over to the other man, I don't recall who the stranger was, and he started to hand him the whiskey out of his pocket, and the other boy walked in the place.

"Q. Did you go in? Did you follow Evans in? Did you see him after he got in there?

"A. He was in the kitchen when we got inside.

"Q. He was in the kitchen?

"A. Yes, sir."

Evans told the officers that he had no connection with the place and was merely requested by appellant to walk with him and get the whiskey. All of this liquor was properly stamped, showing that the taxes had been paid.

Appellant was the only witness for the defense. He admitted ownership of the liquor found by the officers. He testified that he had been operating the Gamecock Grill for about three months; that on account of losing money, he had decided to close up the place on the same night he was arrested and had planned to thereafter go on a party with Evans and three girls to the Club Embassy; that he bought this liquor in the City of Columbia about five o'clock that afternoon and hid it in some bushes near the rear of the General Arts Building; that he did not leave it at his home because his "mother would throw it out"; that he opened the Gamecock Grill about six o'clock that afternoon; and that he did not carry the whiskey into his place of business "because I figured it would cause me trouble if it was caught in there, and I put it over there behind that building". Appellant denied that he had made three trips before being arrested. He stated that when arrested he and Evans were returning from their first trip in removing the liquor from the place where it was hidden under the bushes to his car; that they did not bring all the liquor on this trip because there was not room in their pockets to carry it; and that they contemplated making another trip to bring the balance left in the bushes which the officers found. Appellant further testified that none of the liquor was stored in his place of business and that the bottle found in the rear room was placed there by Evans who ran into the building as the officers approached. It was appellant's contention that none of this liquor had been kept in his place of business and that it was purchased solely for his personal use.

The first count of the indictment charges a violation of Section 14 (c) of Act No. 211 of the Acts of 1945, 44 St. at L., page 337, which is as follows:

"It shall be unlawful for any person to store, or have in possession any alcoholic liquors in his, her or its place of business other than a licensed liquor store. A place of business shall be, and include, any place where good, wares, or merchandise are sold or offered for sale, or distributed, and also places of amusement. A place of business shall also include residences and transportation vehicles when sale of any merchandise is made therefrom. A place of business shall also include outbuildings, warehouses and garages, when adjacent to or used in connection with any place of business where any goods, wares or merchandise are sold, or offered for sale, or distributed therefrom."

Appellant contends that the only liquor "in his place of business" was the bottle placed there through fear by Evans as the officers arrived, and that he was not "in his place of business" at the time the liquor was seized from his person. As previously stated, the officers testified that appellant was arrested while he was within the parking area about three feet from the front door of the Gamecock Grill. This constituted a part of his "place of business" under the construction given by this Court to a similar statute in *State v. Shumpert,* 195 S. C. 387, 11 S. E. (2d) 523. In the *Shumpert case* the defendant operated a combined filling station and grocery store. There was a graveled parking area for the purpose of providing space for customers to park their cars while receiving curb service. The defendant in that case was arrested "while he was on the parking area and approaching an automobile" ·with a pint bottle of liquor in his hand. The Court held that this area was a part of accused's "place of business" and that the evidence was sufficient to sustain a conviction for violation of the statute.

We also think the quoted testimony of Constable Harrison, 'when considered in connection with all the other circumstances disclosed by the testimony, was sufficient to warrant the submission to the jury of the

second count in the indictment, which charged appellant with having in his possession alcoholic liquors for unlawful use.

Judgment affirmed.

BAKER, CJ., FISHBURNE, STUKES and TAYLOR, JJ., concur.